[No. 3951–0–III.   Division Three.   January 7, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
J. SMITH, *Appellant*.

*Michael J. Smith,* pro se, *Gregory J. Lawless,* and *Lawless & Armstrong,* for appellant.

*Curtis Ludwig, Prosecuting Attorney,* for respondent.

ROE, A.C.J.—The defendant Michael Smith appeals his conviction of manslaughter in the first degree. On December 1, 1979, the defendant and several of his coworkers were in a cocktail lounge. Bobby Wright, the victim, and Joe Scanlon, a codefendant, were in a fight and the victim was beaten unconscious by Scanlon. Two witnesses saw the defendant dump the contents of an ashtray on the victim as he lay on the floor, saying, "That's what you deserve, you son–of–a–bitch." Thereafter the defendant slung the victim over his shoulder and carried him out of the cocktail lounge. A witness testified he observed a man walk out of the restaurant and heave what he had on his shoulder onto the asphalt.

According to a doctor's testimony, there were multiple fractures on the back of the bottom of the skull. The damage created a ring of fractures which would arise if a person were dropped from an extreme height or a 180– to 190–pound weight (that of the victim) were crashed on the skull. Thus, the whole bottom of the skull caves in. It took a very significant force to produce the bruises and fractures. He also testified that the head striking the wooden walls of the bar could not produce this trauma, but it would be consistent with a person being heaved off of someone's shoulder onto an asphalt surface. It was the doctor's conclusion the victim died from head injuries sustained when his head struck the asphalt surface.

The defendant testified he had a trick knee which gave out and caused him to drop the victim. His orthopedic surgeon testified the defendant had a history of knee problems and that the weight of the victim's body could have caused the knee to collapse. The trial court denied defendant's motion to dismiss for insufficiency of the evidence and defendant was convicted by a jury of manslaughter in the first degree.

Defendant contends first there is insufficient evidence to support the conviction because virtually no evidence existed to show recklessness. RCW 9A.32.060 provides:

(1) A person is guilty of manslaughter in the first degree when:
(a) He *recklessly* causes the death of another person;
. . .

(Italics ours.) RCW 9A.08.010(1)(c) provides:

(c) *Recklessness.* A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

The defendant properly cites *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980), quoting *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), for the correct test in determining the sufficiency of the evidence: "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'*" *Green* further explained that this inquiry does not require the reviewing court to determine whether *it* believes the evidence at trial established guilt beyond a reasonable doubt but rather whether *any* rational trier of fact could be so convinced.

Here, there was the eyewitness testimony of two people that the defendant dumped the contents of an ashtray on the unconscious victim. That evidence, together with the testimony of Charles Smith, who saw the defendant heave the victim onto the asphalt, and the doctor's testimony, was sufficient to support a belief that the defendant acted recklessly. There was evidence that the defendant did not trip, stumble or fall. Whether the defendant's knee actually went out, causing him to drop the victim, was a factual question for the jury. Judgment as to the credibility of witnesses and the weight of evidence is the exclusive function of the jury. *State v. Braxton,* 20 Wn. App. 489, 491, 580 P.2d 1116 (1978); *State v. Blum,* 17 Wn.

App. 37, 561 P.2d 226 (1977). There was sufficient evidence to support the conviction.

■ The defendant next assigns error to the giving of jury instructions Nos. 24 and 25, which state:

INSTRUCTION No. 24

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

Recklessness also is established if a person acts intentionally or knowingly.

INSTRUCTION No. 25

A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and the failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

Criminal negligence is also established if a person acts intentionally or knowingly or recklessly.

The defendant argues that these instructions were confusing and misleading to the jury because they are so similar and that because they were critical to determining the degree of culpability, a new trial should be granted. These instructions were taken from WPIC 10.03 and 10.04. They contain the statutory language used in the definitions of "Recklessness" and "Criminal negligence" found at RCW 9A.08.010(1)(c), (d), and (2). The court not only may, but should, use the language of the statute in instructing the jury where the law governing the case is expressed in the statute. *State v. Hardwick,* 74 Wn.2d 828, 830, 447 P.2d 80 (1968).

■ In *State v. Burley,* 23 Wn. App. 881, 598 P.2d 428 (1979), the defendant unsuccessfully argued there was no real distinction between the first and second degree manslaughter statutes, RCW 9A.32.060 and 9A.32.070. The court held the statutes on their face are clearly distinguishable, stating at page 884:

Certainly the trier of fact should be able to tell the dif-

ference between conduct undertaken with the knowledge that the actor is creating a grave risk of danger to others, and conduct undertaken in "culpable" ignorance of such danger. We note that our holding in this regard is consistent with the rationale of a number of New York cases that have considered the question of the distinction between reckless and criminally negligent homicide in a variety of contexts.

*See also State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981).[1]

In *Jones,* the defendant assigned error to the trial court's refusal to instruct the jury that it could consider first degree manslaughter as a lesser included offense to the charge of second degree murder. The court grappled with the problem of the differing state–of–mind elements of the two crimes. In discussing this apparent source of confusion, the court provided the following enlightenment at page 621:

> The comments to the original draft of this section of the new criminal code explained:
>> [T]he four mental states are ranked or related in such a way that proof of any one mental state establishes all lower mental states. Thus, where an offense requires a mental state of criminal negligence, proof of intent would also establish criminal negligence, a *sort of "lesser included" mental state.*
>
> (Italics ours.) Legislative Council Judiciary Committee, *Revised Washington Criminal Code* § 9A.08.020, Comment at 34–35 (1970).
>
> It seems plain, therefore, that the drafters of the code contemplated that if intent were established in a criminal case, recklessness would be deemed also established. This approach resolves the trial court's difficulty over whether recklessness or intent are inconsistent mental states.

Similarly, criminal negligence is distinct from recklessness and is a lesser included mental state of recklessness. The trial court did not err in giving instructions Nos. 24 and 25.

■ Finally, in his pro se brief the defendant contends that adverse newspaper publicity before and during the trial prejudiced the jury against him and therefore the jury

---

[1]*See also State v. Hansen,* 30 Wn. App. 702, 638 P.2d 108 (1981).

should have been sequestered. He also claims venue should have been changed to a more congenial and neutral court. However, defendant requested neither sequestration of the jury nor a change of venue prior to trial and no objection was raised during trial. Issues not raised in the trial court will not be considered for the first time on appeal. *State v. Wicke,* 91 Wn.2d 638, 642–43, 591 P.2d 452 (1979).

The judgment of conviction is affirmed.

GREEN and MUNSON, JJ., concur.