IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35507-1-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 35655-8-III) |
| v. | ) | |
| | ) | |
| LARRY EDWARD SILTMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Larry Siltman appeals from convictions, in two separate

prosecutions, for fourth degree assault, resisting arrest, and violation of a no-contact

order.  Concluding that the trial court did not err in limiting evidence at the stipulated

trial and did not abuse its discretion in denying Mr. Siltman's motion for a new trial, we

affirm.

PROCEDURAL HISTORY

The operative facts of these appeals are primarily procedural in nature.  In 2013,

Mr. Siltman was charged in the Okanogan County Superior Court with four counts of

felony violation of a no-contact order and one count of resisting arrest.  Concerns about

his competency to stand trial resulted in an evaluation at Eastern State Hospital.  Dr.

Daniel Lord-Flynn ultimately concluded that Mr. Siltman, while suffering from an

unclassified psychosis, was competent to stand trial. The report noted that jail records had described Mr. Siltman as "agitated" and "delusional" during his first two months in jail.

As a result, a plea agreement was reached in 2015. A stipulated order of continuance (SOC) was entered requiring Mr. Siltman to comply with various conditions over the next two years. In the event that the conditions were violated, Mr. Siltman agreed that his guilt or innocence would be determined in a stipulated trial at which the court would consider the reports disclosed in discovery.

In late 2016, Mr. Siltman was charged with second degree rape and fourth degree assault—domestic violence. The assault was observed by two men who eventually testified at trial. The prosecution lost contact with the victim, Ms. M-S, who did not appear at trial. Because of her disappearance, the rape charge was dismissed prior to trial, but the case went forward on the assault charge without M-S. The jury convicted on the assault charge and the matter was set over for sentencing. M-S unexpectedly appeared at the sentencing hearing and the defense obtained a continuance in order to interview her.

M-S told defense counsel that she did not remember the assault, but believed it did not occur because she would have suffered bruising or other injuries from the attack described by the other witnesses. Mr. Siltman moved for a new trial based on her statements. The trial court denied the motion, deciding that M-S did not have any

credible evidence about the incident because she did not recall it. The absence of bruising was also known by the sexual assault nurse who had examined M-S. The nurse had been scheduled to be a defense witness at trial, but the defense ultimately decided not to call her to testify. After sentence was imposed, Mr. Siltman appealed to this court.

The court then conducted a stipulated trial on the 2013 charges. The defense sought to admit the report of Dr. Lord-Flynn in support of a diminished capacity defense. The court concluded that the report did not constitute discovery and was not admissible. After reviewing the police reports and hearing argument, the court dismissed three of the no-contact charges, but convicted on the fourth, as well as on the resisting arrest charge.

Mr. Siltman also appealed that file. The two cases were consolidated in this court. A panel heard oral argument of the cases.

ANALYSIS

This appeal presents one issue for each of the two cases. First, we consider his contention that the trial court erred by denying his motion for a new trial. We then consider his argument that the trial court wrongly excluded the report of Dr. Lord-Flynn.

*New Trial*

Mr. Siltman contends that the testimony of M-S constituted newly discovered evidence entitling him to a new trial. The trial court did not err in its assessment of the evidence.

A new trial may be granted on the basis of newly discovered evidence if the proponent can establish that the new evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching." *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981). The absence of any one of these five factors is grounds to deny a new trial. *Id.*; *State v. Larson*, 160 Wn. App. 577, 586, 249 P.3d 669 (2011).

The trial court denied the motion after concluding that the evidence was not material to the fourth degree assault charge, was not credible, and would not have changed the outcome. It also was similar to evidence known to the defense, but not pursued at trial. These conclusions indicate that the trial court found that the first, fourth, and possibly the fifth *Williams* factors were lacking.[1]

The trial court correctly recognized that the evidence was not material. Ms. M-S had no memory of the incident; all she had was someone else's recounting of the trial testimony. She had no evidence to contribute. The trial court also correctly recognized that under those facts, the outcome of the trial would not have been different. Two disinterested bystanders observed the incident and testified to what happened. The

---

[1] The fact that the absence of bruising on the victim was known before trial due to the sexual assault examination, also suggests that the evidence was not newly discovered. The court's ruling does not expressly state that point. We need not discuss it in light of the other deficiencies in Mr. Siltman's motion.

4

speculative conclusion that the assault could not have occurred as the witnesses described served, at most, to impeach their testimony. Thus, the proposed new evidence amounted to nothing more than potential impeachment evidence.

For all of those reasons, the new evidence did not justify a new trial. The trial court did not abuse its discretion when it denied the motion.

*Competency Evaluation*

Mr. Siltman also argues that the trial court erred by excluding the competency evaluation from the stipulated trial. The court correctly construed the stipulation. The evidence also was irrelevant and without foundation.

The SOC included a stipulation that any trial would include "the police reports and documents that were provided in discovery" along with any physical evidence and expert analysis of that evidence. 2013 Clerk's Papers at 21. Although Mr. Siltman argues that Dr. Lord-Flynn's evaluation constituted "discovery" materials, the trial court correctly concluded otherwise.

CrR 4.7 provides for discovery in criminal cases. Expert reports, including mental evaluations "made in connection with the particular case," are discoverable. CrR 4.7(a)(1)(iv). The evaluation by Dr. Lord-Flynn would have been discoverable. However, the evaluation was ordered by the trial court, on defense counsel's motion, and reported to the parties in the normal course. *See* RCW 10.77.060(3). The evaluation was not a piece of discovery; it was conducted after charging and the disclosure of discovery.

5

The stipulation only directed that "police reports and documents" that had been "provided in discovery" were admissible. Even if the evaluation was an other "document," there is no evidence that it was provided in discovery. This was a court-ordered document that was shared with the parties and the court upon completion. The trial court did not err in concluding that it was not provided in discovery.

There is a second reason that the evaluation was properly rejected. Mr. Siltman wanted to argue that he had diminished capacity and could not have committed the no-contact order violation. However, the report does not establish diminished capacity.

Diminished capacity is a common law defense in Washington. It can be raised "whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983). A defendant is entitled to a diminished capacity instruction if (1) the crime charged includes a particular mental state as an element, (2) the defendant presents evidence of a mental disorder, and (3) expert testimony logically and reasonably connects the defendant's alleged mental condition with the asserted inability to form the mental state required for the crime charged. *State v. Atsbeha*, 142 Wn.2d 904, 914, 921, 16 P.3d 626 (2001). The testimony of an expert witness is necessary to present a diminished capacity defense. *State v. Stumpf*, 64 Wn. App. 522, 526, 827 P.2d 294 (1992).

Here, there was no expert evaluation opining that Mr. Siltman, due to a mental disorder, was unable to formulate the mental state required to commit a violation of a no-contact order. That is unsurprising since Dr. Lord-Flynn was asked only to evaluate Mr. Siltman's ability to stand trial. Accordingly, his report focused on the defendant's current condition. It was not a report designed to look back to the time of the offense and assess Mr. Siltman's ability to have committed the crime. While the competency evaluation's conclusion that Mr. Siltman had suffered from a mental disability would be a useful first step in a diminished capacity evaluation, that is all that it was. The rest of the necessary analysis was missing.

The evaluation did not establish diminished capacity and therefore was irrelevant. For that reason, also, the evaluation was properly excluded.

Neither assignment of error has merit. Accordingly, the convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                              Siddoway, J.

7